**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

---

JOEL C. GOLDBLATT, and
LESLIE A. DANZIGER

Plaintiffs,

v. No. 1:25-cv-01179-KWR-LF

WELLS FARGO BANK, N.A., and
WELLS FARGO HOME MORTGAGE, INC.

Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO STRIKE AND GRANTING DEFENDANTS' MOTION TO DISMISS**

THIS MATTER comes before the Court upon Defendants' Motion to Strike **(Doc. 12)** and Defendants' Motion to Dismiss **(Doc. 13)**, both filed on January 30, 2026. Having reviewed the parties' briefs and applicable law, the Court finds that both the Motion to Strike and Motion to Dismiss are well taken and, therefore, are **GRANTED**.

**BACKGROUND**

Plaintiffs proceed *pro se*. Defendant Wells Fargo Bank, N.A. and Defendant Wells Fargo Home Mortgage, Inc. will be referred to as "Wells Fargo." The following background facts are taken from Plaintiffs' Complaint. **Compl., Doc. 1-1.** On or about July 25, 2003, Plaintiffs purchased property at 181 Back Basin Road in Angel Fire, N.M. ***Id.*** **¶ 9.** Plaintiffs made this purchase using a "predatory" loan from Wells Fargo for $540,000. ***Id.***

Plaintiffs allege that in October 2008 Wells Fargo accepted $25 billion from the United States government under the Troubled Asset Relief Program ("TARP"). **Compl. ¶ 3.** In 2009,

Wells Fargo signed a contract with the United States Department of the Treasury agreeing to participate in future programs designed to "minimize foreclosures." ***Id.*** Within the scheme of the TARP program, the Treasury Department implemented the Home Affordable Modification Program ("HAMP"). ***Id.* ¶ 4.** On April 17, 2009, Wells Fargo signed a "Servicer Participation Agreement" with the Treasury Department, agreeing to comply with HAMP requirements in facilitating loan modifications and other related processes for loan modifications. ***Id.* ¶ 5.** Plaintiffs allege that Wells Fargo has a general pattern of violating the HAMP requirements that has led to "hundreds of thousands of homeowners (including Plaintiffs) . . . wrongfully being deprived of an opportunity to cure their delinquencies, pay their mortgage loans and save their homes." ***Id.* ¶ 7.** Plaintiffs allege that Wells Fargo has a variety of financial incentives to decline to modify loans, including that "modifying a loan to reduce the principal balance results in a lower monthly fee to Wells Fargo." ***Id.* ¶ 5(h).**

While Plaintiffs allege they made "their mortgage payments in a timely manner from 2003-2011," Plaintiffs maintain that they saw "very little to any principal reduction." ***Id.* ¶ 9.** During the financial downturn in the real estate Plaintiffs faced economic hardships and decided to pursue loan modification. ***Id.*** On December 13, 2013, Plaintiffs modified their mortgage with Wells Fargo under HAMP. ***Id.*** On May 22, 2019, Plaintiffs again modified their mortgage with Wells Fargo in a "HAMP Recast Agreement" that Plaintiffs allege "was supposed to reduce [their] principal, but only delayed the inevitable to August 2033." ***Id.* ¶ 10.**

Plaintiffs allege that both loan modifications did not reduce their principal and, instead, these modifications contained "many accounting errors," creating "discrepancies in the range of $100,000 to $250,000 due . . . [to Plaintiffs]." ***Id.* ¶ 9.** Plaintiffs claim these errors span from "2003 to present." ***Id.*** Plaintiffs do not provide where these discrepancies are found in the loan documents

or otherwise in the body of their Complaint besides indicating that they are found in the "Loan Accounting Analysis Report" attached with the Complaint as Exhibit D. ***Id.*** Plaintiffs indicate this report was made by an "expert." ***Id.*** Dated June 13, 2025, the "Loan Accounting Analysis Report" concluded that "the error of ranges [sic] including damages could be between $100,000 to $250,000 +." ***Id.* at 72, Ex. D.** Immediately following this conclusion, the Report reads:

> "Thus the error of range listed. It is recommende [sic] the recast amount should be adjusted by $250,000 given the evidence and the lack of supporiting [sic] facts from the lender. -$250,000 error of range[,] -$250,000 adjustmnet [sic] should be applied to the loan balance[, and] -$250,000 recomeneded [sic] adjutment [sic] (opinion based). Possible damages opinion based + $500,000 (+)[.] This is an opinon [sic] based ascertation [sic]."

***Id.***

On October 14, 2025, Plaintiffs filed their Complaint against Defendants Wells Fargo, N.A. and Wells Fargo Home Mortgage, Inc., a dba of Wells Fargo Bank, N.A. ("Wells Fargo") in the Eighth Judicial District Court of the State of New Mexico (D-809-CV-2025-00214). **Not. of Rem., Doc. 1 at 1, ¶ 1.** Plaintiffs' Complaint brings seven claims against Wells Fargo:

(1) "Breach of Contract/Unfair and Deceptive Business Practices [under] New Mexico §57-12-3 (2024) Arising Out of Wells Fargo Bank, N.A.'s Performance Of The Servicer Participation Agreement"

(2) "Breach of Covenant of Good Faith and Fair Dealing"

(3) Negligent Misrepresentation

(4) Promissory Estoppel

(5) Consumer Credit Protection Act, Truth in Lending Act

(6) Violation of "Regulation X," 12 C.F.R. § 1024.41(b)(2)(i)(A)

(7) Violation of the Fair Debt Collection Practices Act

**Compl. ¶¶ 11-69.**

On November 25, 2025, after Plaintiffs filed their Complaint in state court, Defendants removed the case to this Court under 28 U.S.C. § 1441(a), based on jurisdiction under 28 U.S.C. § 1332 and § 1331. **Not. of Rem. ¶¶6–7.** On December 12, Magistrate Judge Kirtan Khalsa permitted Plaintiffs to file an Amended Complaint by January 12, 2026, and, if Plaintiffs failed to do so, Defendants were instructed that they may answer or otherwise respond to the original Complaint. **Order on Pending Mots., Doc. 7.** Plaintiffs did not file an amended complaint by January 12 but filed one on January 29 and again the following day. **Am. Compl., Doc. 9; Am. Compl., Doc. 10.** On January 30, 2026, Defendants filed a Motion to Strike the Amended Complaints and a Motion to Dismiss targeting the original Complaint. **Mot. to Strike, Doc. 12; Mot. to Dismiss., Doc. 13.** On February 4, 2026, Plaintiffs filed a Motion for Extension of Time to Amend their Complaint. **Doc. 14.** On February 20, 2026, Magistrate Judge Khalsa denied Plaintiffs' motion to file an amended complaint. **Doc. 16.** On February 24, 2026, Plaintiffs filed a Response to Defendants' Motion to Strike and Motion to Dismiss. **Doc. 17.** On February 26, Plaintiffs refiled their Amended Complaint without permission and despite Magistrate Judge Khalsa's order denying their earlier request to do so. **Doc. 19.** That same day, Plaintiffs again requested permission to file an untimely amended complaint. **Doc. 20.** On March 10, 2026, Defendants filed a Reply to Plaintiffs' Response to Defendants' Motion to Dismiss. **Doc. 23.** This Court will now review the Defendants' Motion to Dismiss and Motion to Strike.

## LEGAL STANDARDS

Under the Federal Rules of Civil Procedure, the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a Rule 12(b)(6) to dismiss, the Court must accept as true all well-pleaded factual allegations from the complaint, view those allegations in the light most favorable to the plaintiff, and draw all

reasonable inferences in favor of the plaintiff. *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009). However, "the four corners of the complaint" mark the boundaries of the allegations the Court uses to determine the outcome of the 12(b)(6) motion to dismiss. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). Additionally, "if the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Bank of America, N.A. v. Dakota Homestead Title Ins. Co.*, 553 F. App'x. 764 at 765 (10th Cir. 2013) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007).

Plaintiffs proceed *pro se* and, consequently, "the court should construe… [the] pleadings liberally and hold the pleadings to a less stringent standard than formal pleadings drafted by lawyers." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996). However, *pro se* parties are expected to follow the same rules as represented parties and the Court cannot act as a *pro se* party's advocate or counsel, construing arguments and searching the record for him. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.") (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).

**DISCUSSION**

Defendants move to strike Plaintiffs' Amended Complaint as untimely and filed without excusable neglect. Defendants also move to dismiss Plaintiffs' original claims for statutes of limitations violations, failure to state a claim, among other challenges. The Court grants Defendants' Motion to Strike and strikes the Amended Complaint as untimely. Additionally, the amendment is not well taken as it is futile. The Court dismisses the claims in this case as violating the statutes of limitations. Plaintiffs have not established any reason as to why the statutes of

limitations should not apply here, such as equitable tolling. Plaintiffs also fail to state their claims with sufficient, plausible factual allegations.

## I. The Court will grant Defendants' Motion to Strike.

Under the Federal Rules of Civil Procedure ("Rule") 15, a party may amend its pleadings once as a matter of course 21 days after service or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). If a party misses this deadline, the "party may amend its pleading only with the opposing party's written consent or the court's leave" which should be given freely "when justice so requires." *Timken v. South Denver Cardiology Associates, P.C.*, 155 F. 4th 1227, 1241 (10th Cir. 2025); Fed. R. Civ. P. 15(a)(2). Amended complaints that are filed untimely may be struck. *Matthews v. LaBarge, Inc.*, No. 09–5171, 407 Fed. App'x. 277, 280 (10th Cir. 2011) (when a plaintiff files an untimely amendment without the court's leave, Rule 15 allows the amended complaint to be struck). However, the court may decline to grant leave if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing [them] an opportunity to amend [their] complaint would be futile." *Cohen v. Longshore*, 621 F.3d 1311, 1314–15 (10th Cir. 2010) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). If an amendment would be subject to dismissal, the "proposed amendment is futile." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (quoting *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)).

Generally, a party must make a motion for leave to amend a complaint, and a district court need not offer leave to amend *sua sponte*. Local Rule 15.1 requires that "a proposed amendment to a pleading must accompany the motion to amend." D.N.M.LR-Civ. 15.1. The Tenth Circuit has held that the federal rules also require a motion to be filed. *Serna v. Denver Police Dep't*, 58 F.4th

1167, 1172 (10th Cir. 2023) (*Pro se* plaintiff "never separately filed a motion with a proposed amended complaint adding those claims, as required by Federal Rule of Civil Procedure 15(a)(2) and District of Colorado Rule 15.1(b)."). Rule 7 requires a request for relief to be made by a motion that (1) is in writing, (2) "states with particularity the grounds for seeking the order," and (3) specifies the relief sought. Fed. R. Civ. P. 7(b)(1). "We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999).

The Tenth Circuit has also held that it is not arbitrary or capricious for a district court to deny leave to amend where a motion for leave to amend was not filed. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021) ("We have long held that bare requests for leave to amend do not rise to the status of a motion and do not put the issue before the district court."); *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 706 (10th Cir. 2014) (court did not abuse discretion in denying leave to amend where party did not file a motion); *Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 369–72 (10th Cir. 1989) ("Appellant did not move the court for leave to amend the complaint and therefore the district judge committed no error in not ruling thereon."). Therefore, when a party does not request leave to amend after a motion to dismiss was filed, Tenth Circuit law is clear that a district court generally need not *sua sponte* offer leave to amend.

In some cases, a court should offer a *pro se* party leave to amend *sua sponte*, such as where the Court dismisses a complaint *sua sponte* and a motion to dismiss has *not* been filed. *Serna*, 58 F.4th 1167, 1173 n.4; *Hall v. Bellmon*, 935 F.2d at 1109–10 ("Although dismissals under Rule 12(b)(6) typically follow a motion to dismiss, giving plaintiff notice and opportunity to amend his

complaint, a court may dismiss *sua sponte* "when it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile."). That is not the case here as Defendants have filed a motion to dismiss.

When a motion to dismiss is filed, the motion provides notice to a party of the defects in a complaint and provides an opportunity for the *pro se* plaintiff to seek leave to amend to fix the defects. *Serna*, 58 F.4th at 1173 n.4 (noting that court need not grant *pro se* plaintiff leave to amend where a motion to dismiss was filed, distinguishing cases where court *sua sponte* screened and dismissed complaint); *see also Hall*, 935 F.2d at 1109–10 (recognizing that a motion to dismiss provides a plaintiff notice and opportunity to amend complaint, as opposed to *sua sponte* dismissal). Therefore, when a motion to dismiss is filed, a district court need not *sua sponte* offer leave to amend. *Serna*, 58 F.4th at 1173 n.4.

Plaintiffs' attempt to amend their complaint is untimely.[1] When the magistrate judge gave Plaintiffs permission to file an untimely amended complaint, Plaintiffs were given a clear deadline to file, they missed this deadline without excuse. **Doc. 7 at 1.** Plaintiffs' Response to Defendants' Motion to Strike and Motion to Dismiss does not address Defendants' arguments for striking the Amended Complaints. **Doc. 21.** Plaintiffs do not provide any adequate reason for the delay in filing. ***Id.*** Defendants properly responded to Plaintiffs' original Complaint in accordance with Magistrate Judge Khalsa's Order. **Doc. 7; Mot. to Dismiss Compl.**

While Plaintiffs have asserted a Motion for Extension of Time to Amend their Complaint, Plaintiffs provide a one-sentence request lacking any reasoning for the amendment or any

[1] When discussing Plaintiffs' "Amended Complaint," the Court notes that Plaintiffs have filed their Amended Complaint as **Doc. 9** and **Doc. 19.** Additionally, Plaintiffs filed another Amended Complaint as **Doc. 10** (which is slightly shorter and does not appear to contain any different or additional material than the other Amended Complaints). Therefore, the Court will reference **Doc. 9** when discussing Plaintiffs' Amended Complaint.

explanation of their failure to comply with court deadlines. Therefore, under Rule 7 of the Federal Rules of Civil Procedure, the Court need not allow the Amended Complaint as Plaintiffs' Motion for Extension of Time does not state with particularity what circumstances justify granting the Motion. Fed. R. C. P. 7(b)(1); **Doc. 20.**

Plaintiffs also fail to show good cause or excusable neglect to justify their late filing. Under Rule 6, "the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. C. P. 6(b)(1)(B). "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect, it is clear that excusable neglect under Rule 6(b) is a somewhat elastic concept and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993) (quotations omitted). Whether neglect is excusable "is at bottom an equitable [determination], taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395. Under the *Pioneer* factors, courts consider "[1] the danger of prejudice to the [non-moving party], [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith." *Id.* "[T]he most important [*Pioneer*] factor" is the third. *Perez v. El Tequila, LLC*, 847 F.3d 1247, 1253 (10th Cir. 2017). "[A]n inadequate explanation for delay may, by itself, be sufficient to reject a finding of excusable neglect." *Id.*; *see also United States v. Torres*, 372 F.3d 1159, 1162-64 (10th Cir. 2004) (finding no excusable neglect where three lesser factors weighed in movant's favor but reason for delay did not). Here, Plaintiffs provide no explanation for the delay and, thus, do not show excusable neglect. Additionally, Plaintiffs were given clear instructions on when to file their amended complaint.

As discussed above, if an amendment would be subject to dismissal, the "proposed amendment is futile." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018 (10th Cir. 2013) (quoting *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004)). Here, regardless of whether the Court granted leave for the Amended Complaint, Plaintiffs' claims would not survive the Motion to Dismiss as discussed below. The Amended Complaint does not provide Plaintiffs with any countervailing reasons that would lead the Court to deny the Motion to Dismiss. Therefore, Plaintiffs' Amended Complaint is also futile. Given Plaintiffs' failure to comply with Rule 7, their Amended Complaint's futility, and Defendants' reliance on the magistrate judge's direction to respond to the original Complaint, the Court grants Defendants' Motion to Strike.

## II. <u>The Court will grant Defendants' Motion to Dismiss.</u>

Plaintiffs' claims are barred by the relevant statutes of limitations and fail to allege sufficient, non-conclusory facts to state a claim under Rule 12(b)(6). While Defendants raise other reasonable objections to Plaintiffs' claims, the Court will resolve their Motion to Dismiss in Defendants' favor on those two grounds.

### A. Plaintiffs' claims are time-barred.

Plaintiffs raise both federal and state law claims. All of Plaintiffs' claims suffer from the same issue: they were filed after the relevant statute of limitations.

Typically, a plaintiff does not have to plead facts in their complaint to overcome the affirmative defense of a statute of limitations. However, a plaintiff must plead relevant facts when the "statute of limitations defense . . . [is] patently clear from the face of the complaint or rooted in adequately developed facts." *Graham v. Taylor*, 640 F. App'x 766, 768 (10th Cir. 2016) (citation modified); *Chrisco v. Holubek*, 711 F. App'x 885, 888 (10th Cir. 2017), (citing *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)). Said another way,

"although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss when the dates given in the complaint make clear that the right sued upon has been extinguished." *Torrez v. Eley*, 378 F. App'x 770, 772 (10th Cir. 2010). Plaintiffs' Complaint contains facial violations of the statute of limitations. The Court will review the federal claims first and then proceed to the state law claims. Subsequently, the Court will explain why the additional facts offered in the Plaintiffs' Amended Complaint and the legal arguments in Response do not remedy the statute of limitations issues.[2]

1. *Federal claims.*

Plaintiffs bring three federal claims. First, Plaintiffs allege that Defendants violated the Consumer Credit Protection Act ("CCPA") under the Truth in Lending Act section ("TILA") by "failing to disclose the purported assignments/transfer of the Promissory Note and DOT." **Compl. ¶ 55.**[3] Second, Plaintiffs allege that Defendants violated Regulation X by failing to make certain determinations regarding Plaintiffs' loan modification application and by failing to comply with other procedural and timing requirements of Regulation X. ***Id.*** **¶ 57.** Third, Plaintiffs allege that Defendants violated the Fair Debt Collections Practices Act ("FDCPA") by improperly collecting debt unauthorized by law. ***Id.*** **¶ 69.**

TILA.

While the Complaint is often less than clear, Plaintiffs' TILA claim seems to allege that Defendants failed to provide notice to Plaintiffs of a "new creditor" under 15 U.S.C. § 1641(g). ***Id.*** **¶ 54.** TILA is the short title of Title I of the CCPA. 15 U.S.C. § 1601. The CCPA was enacted

---

[2] While a strict application of waiver rules could bar some of Plaintiffs' claims for failure to raise them in their Response, the Court will not treat them as waived on account of Plaintiffs' *pro se* status. *See generally* **Resp. in Opp. to Mot. to Strike.**

[3] Plaintiffs seem to intend to reference the Truth in Lending Act ("TILA"), citing to "15 USC Ch. 41 § 1461(g)" but quoting from 15 U.S.C. § 1641(g). **Compl. ¶ 53;** 15 U.S.C. § 1641(g).

"to safeguard the consumer in connection with the utilization of credit by requiring full disclosure of the terms and conditions of finance charges in credit transactions or in offers to extend credit." Consumer Credit Protection Act of 1968, Pub. L. No. 90-321, 82 Stat. 146. TILA has a one-year period of limitations. 15 U.S.C. § 1640(e); *Richard Thomas Thigpen v. Westlake Servs., LLC*, No. 25–2081, 2026 WL 2253778, at *1 (10th Cir. 2026).

Plaintiffs do not allege specific facts for their TILA claim. **Compl. ¶ 53.** Despite the Complaints' lack of clarity about what conduct is alleged to have violated TILA, a generous read of the Complaint reveals Plaintiffs may intend a TILA claim based on the latest conduct allegedly performed by Wells Fargo: the 2019 mortgage negotiation. ***Id.* ¶ 10.** Plaintiffs do not make specific factual assertions regarding Defendants' conduct transpiring later than 2019, dating back far too long for the one-year statute of limitations. Therefore, on the face of the Complaint, the TILA claim has been time-barred by several years.

<u>Regulation X.</u>

Regulation X is a subsection of the Real Estate Settlement Procedures Act ("RESPA") that regulates a loan servicer's obligations when reviewing a borrower's application to modify or mitigate their losses under a mortgage. 12 C.F.R. § 1024.41 (2023); 12 U.S.C. § 2605. Regulation X claims must be brought within three years. 12 U.S.C. § 2614; *see Monge v. Nevarez Law Firm*, No. 20–01118, 2021 WL 2667165, at *3 (D.N.M. 2021).

Plaintiffs' Regulation X claim alleges that Wells Fargo failed to "conduct a review" as to whether Plaintiffs' loan modification application was "complete or incomplete," which they allege is procedurally required under Regulation X. **Compl. ¶ 58.** Supporting this assertion, Plaintiffs offer a handful of often undated or conclusory allegations. Additionally, Plaintiffs allege Wells Fargo failed to "act affirmatively to complete the Plaintiff's [sic] loan modification application."

***Id.* ¶ 61.** The most recent dated action by Defendants that Plaintiffs describe is their 2019 HAMP Recast Agreement. ***Id.* ¶ 10.** At best, the Complaint could intend to suggest that this 2019 modification was improperly handled by Wells Fargo in their procedures leading up to the modification. But, any 2019 conduct, such as the formation of the 2019 modification contract, falls too long ago. Therefore, the Regulation X claim is untimely as the most recent, adequately pled conduct occurred more than three years ago.

<u>FDCPA.</u>

The FDCPA regulates the conduct of debt collectors and the practices available when attempting to collect debt. FDCPA claims are governed by a one-year statute of limitations. 15 U.S.C. § 1692k(d). This section of the FDCPA states that "an action to enforce any liability created by [the FDCPA] may be brought in any appropriate United States district court . . . within one year from the date on which the violation occurs." *Id.*; *see Johnson v. Riddle*, 305 F.3d 1107, 1113 (10th Cir. 2002). As discussed above for the other federal claims, Plaintiffs' FDCPA claim is time-barred as no conduct specifically alleged within the Complaint is alleged to have occurred within the past year.

In sum, all three federal claims are time-barred as Plaintiffs failed to file within the relevant statutes of limitations. Next, the Court will address Plaintiffs' state law claims.

2. *State law claims.*

Plaintiffs also raise state law claims: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) violation of New Mexico Unfair Practices Act; (4) negligent misrepresentation; and (5) promissory estoppel. **Compl. ¶¶ 11–52.** Defendants properly removed the state law claims by invoking diversity jurisdiction. ***Id.* ¶ 6.** "In cases arising under diversity jurisdiction, the federal court's task [is] . . . simply to 'ascertain and apply the state law.'" *Wade v.*

*EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007) (quoting *Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003)). The Court "must follow the most recent decisions from the state's highest court," but "where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Id.* at 665–6. The Court may "seek guidance from decisions rendered by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* (citation modified).

Breach of contract.

Plaintiffs generally allege a breach of contract claim with Wells Fargo, not clearly identifying any provision which was breached. **Compl. ¶¶ 11–35.** Under New Mexico law, "a plaintiff claiming breach of contract has the burden of proving the existence of the contract, breach of the contract, causation, and damages." *Central Market, Ltd., Inc. v. Multi-Concept Hospitality, LLC*, 2022-NMCA-21, ¶ 38, 508 P.3d 924; *see Young v. Hartford Cas. Ins. Co.*, 503 F. Supp. 3d 1125, 1179 (D.N.M. 2020) (quoting *Abreu v. N.M. Children, Youth and Families Dep't*, 797 F. Supp. 2d 1191, 1247 (D.N.M. 2011). Breach of contract claims must be brought within six years under New Mexico law. NMSA 1978, § 37-1-3(A) (2025) ("Actions founded upon any . . . contract in writing shall be brought within six years."). Since Plaintiffs do not directly indicate what term of which contract was breached, the Court will look to the date of Plaintiffs' most recent contract identified in the Complaint filed on October 14, 2025. **Not. of Rem., Doc. 1 at 1, ¶ 1.** Plaintiffs' most recent contract with Wells Fargo was made in May 2019, their HAMP Recast Agreement.

**Compl. ¶ 10.** Thus, Plaintiffs' breach of contract claim is time-barred as it occurred more than six years prior to Plaintiffs filing their Complaint.[4]

Unfair and Deceptive Practices under NMSA 1978 § 57-12-3.

Plaintiffs allege an unfair and deceptive business practices claim under NMSA 1978, Section 57-12-3. **Compl. ¶¶ 11-35.** Under the New Mexico Unfair Practices Act ("UPA"), "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful." *See* NMSA 1978, § 57-12-3 (2025). To state a claim under the UPA, a plaintiff must allege that "(1) defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person." *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007) (citing *Brooks v. Norwest Corp.*, 2004-NMCA-134, ¶ 37, 136 N.M. 599, 103 P.3d 39). As relevant here, the term "unfair or deceptive trade practice" is defined as "a false or misleading oral or written statement . . . knowingly made in connection with . . . the extension of credit or in the collection of debts . . . that may, tends to or does deceive of mislead any person." NMSA 1978, § 57-12-2(D) (2025). New Mexico law requires filing a claim under Section 57-12-3 within four years of the cause of action emerging. NMSA 1978 § 37-1-4 (2025). Here, again, Plaintiffs' Complaint does not sufficiently allege conduct within the last four years and, thus, the unfair practices claim is time-barred.

[4] Plaintiffs also reference a violation of "New York Statutory Law." **Compl. ¶ 27.** It is unclear whether Plaintiffs reference this source of law intentionally, but regardless New York law does not govern this litigation.

Covenant of Good Faith and Fair Dealing.

Plaintiffs allege a breach of the covenant of good faith and fair dealing. **Compl. ¶¶ 36–40.** The implied covenant of good faith and fair dealing "requires that neither party [to a contract] do[es] anything that will injure the rights of the other to receive the benefit of their agreement." *Sanders v. FedEx Ground Package Sys., Inc.*, 2008-NMSC-040, 144 N.M. 449, ¶ 7, 188 P.3d 1200 (quoting *Bourgeous v. Horizon Healthcare Corp.*, 1994-NMSC-038, ¶ 16, 117 N.M. 434, 872 P.2d 852).To allege a breach of this implied covenant, the party must show "bad faith or that one party wrongfully and intentionally used the contract to the detriment of the other party." *Sanders*, 2008-NMSC-040, ¶ 7. Bad faith requires "deliberate disregard for[] the potential of harm to the other party." *Paiz v. State Farm Fire & Cas. Co.,* 1994-NMSC-079, ¶ 31, 118 N.M. 203, 880 P.2d 300. As with the general breach of contract claim, these claims must also be brought within a six-year period of the formation of the contract or when the claim should have reasonably been discovered. NMSA 1978 § 37-1-3. Plaintiffs fail to identify circumstances later than the 2019 loan modification that could be construed as violating the covenant of good faith and fair dealing. Therefore, the covenant of good faith and fair dealing claim is time-barred.

Negligent Misrepresentation.

Plaintiffs' Count III alleges negligent misrepresentation. **Compl. ¶¶ 41–44.** "To recover under a theory of negligent misrepresentation, a plaintiff must show that: (1) the defendant made a material representation to plaintiff, (2) the plaintiff relied upon the representation, (3) the defendant knew the representation was false or made it recklessly, and (4) the defendant intended to induce reliance by the plaintiff." *Robey v. Parnell*, 2017-NMCA-038, ¶ 31, 392 P.3d 642 (citing *Saylor v. Vales*, 2003-NMCA-037, ¶ 17, 133 N.M. 432, 63 P.3d 1152). Under New Mexico law, negligent misrepresentation claims must be brought either within four years (NMSA 1978, § 37-

1-4 specifies four years for "all other actions not herein otherwise provided for") or three years for negligence under NMSA 1978, § 37-1-8. *White v. Amber Sies Cmty., LLC*, 2026-NMCA-055 ¶ 10, 589 P.3d 128 (discussing but not deciding whether the three-year statute of limitations or four-year applies under New Mexico state law for negligent misrepresentation). Again, Plaintiffs do not allege facts suggesting negligent misrepresentation occurred within this period, as their latest allegations concern their 2019 contract. Therefore, any negligent misrepresentation regarding even Plaintiffs' latest contract in 2019 with Wells Fargo is time-barred regardless of whether the three-year or four-year rules is applied.

Promissory Estoppel.

Count IV alleges promissory estoppel. **Compl. ¶ 45.** New Mexico state courts define the elements of promissory estoppel as follows: "(1) [a]n actual promise must have been made which in fact induced the promisee's action or forbearance; (2) [t]he promisee's reliance on the promise must have been reasonable; (3) [t]he promisee's action or forbearance must have amounted to a substantial change in position; (4) [t]he promisee's action or forbearance must have been actually foreseen or reasonably foreseeable to the promisor when making the promise; and (5) enforcement of the promise is required to prevent injustice." *Battishill v. Ingram*, 2024-NMCA-001, ¶ 15, 139 N.M. 24 (quoting *Strata Prod. Co. v. Mercury Expl. Co.*, 1996-NMSC-016, ¶ 20, 121 N.M. 622). State law provides for a six-year statute of limitations for contract claims. NMSA 1978, §37-1-3(A) ("Actions founded upon any . . . contract in writing shall be brought within six years."). State law also contains a provision covering "unwritten contracts . . . and all other actions not herein otherwise provided for specified within four years." NMSA 1978, § 37-1-4. Whichever subsection referenced, this claim is also time-barred as it occurred more than six years after the latest date

included in the Complaint with respect to Wells Fargo's actions as Plaintiffs failed to sufficiently allege any conduct after 2019.

3. *Even if the Court considers Plaintiffs' arguments outside of their Complaint, Plaintiffs present no compelling arguments to avoid the statutes of limitations issues.*

Plaintiffs raise equitable tolling in their response to the motion to dismiss, but they did not plead equitable tolling in their complaint. They raise equitable tolling for the first time in their Response. **Doc. 17 at 1.** The Court generally does not consider factual allegations outside of the four corners of a plaintiff's complaint when reviewing a motion to dismiss for failure to state a claim. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). Plaintiffs did not plead factual allegations supporting equitable tolling. Even if the Court considered this argument found in Plaintiffs' Response, equitable tolling does not apply to Plaintiffs' claims. Additionally, Plaintiffs' Amended Complaint does not contain any additional arguments or factual assertions that would permit or require the Court to apply equitable tolling. The Court will first look to federal equitable tolling rules for the federal claims, then to state rules for the state claims.

"Equitable tolling is discretionary and 'is granted sparingly.'" *Farhat v. United States*, No. 21–7061, 2022 WL 2840483, at *5 (10th Cir. 2022) (quoting *Chance v. Zinke*, 898 F.3d 1025, 1033–34 (10th Cir. 2018)). To succeed on equitable tolling, a party must show that "they diligently pursued their rights *and* that some extraordinary circumstance stood in their way." *Id.* at *5; *see Thigpen v. Westlake Servs., LLC*, No. 25–2081, 2026 WL 2253778, at *2 (10th Cir. 2026) (equitable tolling for TILA claims); *Perkins v. Johnson*, 551 F. Supp. 2d 1246, 1253 (D. Colo. 2008) (equitable tolling for RESPA claims); *see also Cobb v. Tinker Fed. Credit Union*, Nos. 21–6020; 21–6024, 2022 WL 473007, at *4 (10th Cir. 2022) (equitable tolling for FDCPA claims).

In *Thigpen*, the plaintiff argued for equitable tolling based on a contract to purchase a truck. *Thigpen*, 2026 WL 2253778, at *1. After the Tenth Circuit found the plaintiff failed to file timely

suit under the statute of limitations for TILA, the Tenth Circuit concluded that the absence of an explanation as to why or how he was prevented from finding the contractual issue meant this Court correctly concluded equitable tolling did not apply. *Id.* at *2. The Tenth Circuit wrote "without such an explanation [as to why plaintiff could not have discovered the violations earlier], the district court didn't err in rejecting Mr. Thigpen's reliance on equitable tolling." *Id.*

In *Farhat*, the Farhat family experienced "a tragic boating accident" that took the lives of several members of the family. *Farhat*, 2022 WL 2840483, at *1. The family's representatives brought suit under the Federal Tort Claims Act, but the exclusive remedy was found under the Suits in Admiralty Act. *Id.* Despite the Farhat's representatives' arguments that the Navy misrepresented the statute of limitations applicability during the administrative proceedings, the Tenth Circuit found that the plaintiffs' claim to equitable tolling was unpersuasive as they could have discovered the statute of limitations through diligent research. *Id.* at *5–6. The court noted that even if the plaintiffs could show the Navy had a "sinister" motive in their representations about the applicability of the FTCA, it would not be enough for equitable tolling. *Id.* The court held that plaintiffs would need to both "plead facts to demonstrate such an intent" to mislead them and facts showing they acted diligently to discover their claim before the expiration of the statute of limitations. *Id.* "A defendant's active misleading will not excuse a plaintiff's lack of diligence." *Id.* at *6.

Here, Plaintiffs have not demonstrated either of the two elements required for equitable tolling. First, as in *Farhat*, Plaintiffs could have discovered their legal claims through diligent research. Plaintiffs fail to allege facts that they pursued these avenues before the expiration of the various statutes of limitations. It is not enough that Plaintiffs may not have known about their claims until recently, their lack of knowledge must have persisted despite serious efforts to

discover their legal claims. Plaintiffs' only contention otherwise is that they obtained the "Forensic Accounting Report" in 2025. **Doc. 17 ¶ 6.** Plaintiffs press the importance of this Report's demonstration that Plaintiffs' mortgages were rife with errors, amounting to massive overcharges. ***Id.*** But, this does not address Plaintiffs' lack of diligence.

Second, Plaintiffs fail to allege facts showing that an extraordinary circumstance, such as another party's improper concealment, prevented Plaintiffs from discovering their claims sooner. Plaintiffs' Complaint does not allege facts showing any extraordinary occurrences preventing their discovery of their claims. For example, Plaintiffs do not assert any factual allegations showing that Wells Fargo blocked Plaintiffs from obtaining the 2025 "Forensic Accounting Report." ***Id.*** Thus, neither of the two elements of equitable tolling are met.

With respect to the new factual assertions contained in the Amended Complaint, granting leave to allow the Amended Complaint would be futile. The Amended Complaint does not provide any reason for the Court to allow equitable tolling. Primarily, Plaintiffs include an additional Exhibit F that seemingly contains form letters Wells Fargo sent to Plaintiffs with various portions underlined, marked with question marks, and amounts circled. **Am. Compl. at 80 (Ex. E).** These additional pieces of information do not clearly pertain to equitable tolling and Plaintiffs have not made a sufficient attempt to show how they would establish the elements of equitable tolling.

Plaintiffs also contend (in their post-Complaint filings) that equitable tolling applies for their state law claims. **Doc. 17 at 1.** While there is great overlap between New Mexico's state law surrounding equitable tolling and federal law, the Court will address it briefly.

"New Mexico has characterized 'equitable tolling' as a non-statutory tolling principle that provides relief in cases when circumstances beyond the plaintiff's control preclude filing suit within the statute of limitations." *Snow v. Warren Power & Mach., Inc.*, 2015-NMSC-026, ¶ 24,

354 P.3d 1285 (citing *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 15, 135 N.M. 539, 91 P.3d 58). Defining the rules for equitable tolling in New Mexico, the Tenth Circuit held that the party arguing for equitable tolling must show that "(1) he has been pursuing his rights diligently; and (2) that some extraordinary circumstance prevented him from doing so." *Hollis v. Farm Bureau Prop. & Cas. Ins. Co.*, No. 25–2059, 2026 WL 555505, at *4 (10th Cir. 2026) (citing *Credit Suisse Sec. (USA), LLC v. Simmonds*, 566 U.S. 221, 227 (2012)). As is clear from the Tenth Circuit's definition, the New Mexico equitable tolling rule bears, at the very least, immense similarity to the federal equitable tolling rule. As discussed *supra*, Plaintiffs fail to meet either element required for equitable tolling under federal law: (1) Plaintiffs do not allege sufficient (or any) facts showing they pursued their rights diligently during the statutory period; and (2) Plaintiffs do not allege facts showing any extraordinary circumstances interfering with filing. Plaintiffs fail to relay what actions Wells Fargo took to prevent them from discovering their claims, or any other intervening events.[5]

Closely related to equitable tolling, New Mexico also allows for the statute of limitations defense of fraudulent concealment. **Doc. 17 ¶ 2.** However, fraudulent concealment is not shown for similar reasons as to why equitable tolling is not shown. "A plaintiff alleging fraudulent concealment carries the burden to establish all facts necessary to prove it." *Estate of Brice*, 2016-NMSC-018, ¶ 10 (citing *Kern ex rel. Kern v. St. Joseph Hosp., Inc.*, 1985-NMSC-031, ¶ 12, 697

[5] While Plaintiffs do cite (outside of their Complaint) to case law in support of equitable tolling, these cases conform with the Court's analysis or are unrelated. *See, e.g., Estate of Brice v. Toyota Corp.*, 2016-NMSC-018 ¶ 11, 373 P.3d 977 (quoting *Shropshear v. Corp. Counsel of the City of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001))("Equitable tolling . . . [requires plaintiff being] despite the exercise of all due diligence . . . unable to obtain vital information bearing on the existence of his claim"); *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 15, 135 N.M. 539, 91 P.3d 58 (2004) (citations omitted)("equitable tolling typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control").

P.2d 135). Plaintiffs must allege factual assertions pertaining to the two elements necessary for fraudulent concealment: "(1) the defendant knew of the alleged wrongful act and concealed it from the plaintiff or had material information pertinent to its discovery which he failed to disclose, and (2) the plaintiff did not know, or could not have known through the exercise of reasonable diligence, of the cause of action within the statutory period." *Id.* As discussed *supra* when evaluating the equitable tolling claim, Plaintiffs do not show evidence that Wells Fargo knew of a wrongful act, that it hid a wrongful act, or that Plaintiffs could not have discovered their causes of action within the statutory period.

Neither Plaintiffs' Complaint nor any of their other filings present persuasive arguments as to why this Court should not apply the relevant statutes of limitations to Plaintiffs' claims. The Court will not *sua sponte* address a continuing violation argument. Therefore, the statutes of limitations time-bar all of Plaintiffs' claims. Thus, the Court dismisses Plaintiffs' claims under Rule 12(b)(6).

**B. Additionally, Plaintiffs' claims fail to allege sufficient, non-conclusory facts.**

While the statute of limitations issue is sufficient to grant the Motion to Dismiss, Plaintiffs' Complaint and Amended Complaint also insufficiently plead specific factual allegations.

Pleadings must do more than provide "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is not enough. *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court "disregard[s] conclusory statements and look[s] only to whether the remaining[] factual allegations plausibly suggest the defendant is

liable." *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1066–67 (10th Cir. 2022) (quoting *Khalik v. United Air Lines*, 671 F.3d 118, 1191 (10th Cir. 2012)).

For their breach of contract claim, Plaintiffs make conclusory statements that Wells Fargo failed to provide a loan modification that complied with the SPA. Putting aside whether Plaintiffs could sue under this contract, Plaintiffs do not explain what calculations were made incorrectly or what promises were violated and when. Additionally, Plaintiffs fail to identify provisions of a contract that was breached or what specific actions were taken in relation to a breach. Thus, Plaintiffs' breach of contract claim fails to state a claim.

For Plaintiffs' UPA claim, they allege many elements of an UPA claim listing conclusory allegations that Wells Fargo was "false" and "deceptive." **Compl. ¶ 21.** To state a claim under the UPA, a plaintiff must allege a defendant's representation that was (1) "false or misleading"; (2) "knowingly made in connection with the sale, lease, rental or loan of goods or services in the extension of credit or . . . collection of debts"; (3) "occurred in the regular course of the [defendant's] trade or commerce; and (4) "of the type that may, tends to or does, deceive or mislead any person." *Salas v. Guadalupe Credit Union*, 2025-NMSC-006, ¶ 48, 563 P.3d 873 (citations omitted); *see Mulford v. Altria Grp., Inc.*, 506 F. Supp. 2d 733 (D.N.M. 2007). In support of their UPA claim, Plaintiffs allege the following: "[s]pecifically, that a home loan specialist would review the Plaintiffs' current situation and to determine Plaintiffs' eligibility for loan assistance options and then to be told that the Plaintiffs qualified for loan assistance and would be speaking with Wells Fargo, N.A. regarding additional paper and be receiving a Trial Period Plan . . . [sic]" **Compl. ¶ 21.** This factual allegation and others are either unclear or conclusory and fail to properly allege the elements of an UPA claim.

For Plaintiffs' breach of the covenant of good faith and fair dealing claim, Plaintiffs seem to have one non-conclusory allegation. Plaintiffs allege that from 2011 to 2013 they "believed that they were going to receive a HAMP modification once they were approved and completed the Trial Period Plan." **Compl. ¶ 37.** This allegation provides insufficient detail to state a claim as it does not allege what actions Defendants took to act in bad faith. It merely states that Plaintiffs had a belief that they would receive a HAMP modification. Additionally, Plaintiffs did receive a HAMP modification, making this allegation far from clear. ***Id.*** **¶ 9.** The remainder of Plaintiffs' factual allegations are purely conclusory, e.g. that Wells Fargo was "acting in bad faith for its own economic benefit," ***Id.*** **¶ 38**, or that Wells Fargo made "inaccurate calculations." ***Id.*** **¶ 38(d).**

Plaintiffs' negligent misrepresentation claim contains conclusory assertions of its elements, e.g. "Plaintiffs reasonably relied on Defendants' misrepresentations to their personal, financial and legal detriment and to the benefit of Defendants." ***Id.*** **¶ 43.** Plaintiffs allege Defendants misquoted Plaintiffs' monthly payments and improperly presented the payments as a requirement to get "an affordable HAMP modification." ***Id.*** **¶ 42.** This allegation misses any details of what monthly amounts were possible for a HAMP modification, what amounts Plaintiffs were charged, or what Defendants "misrepresented" about their monthly rates. ***Id.***

Plaintiffs' promissory estoppel claim alleges that Defendants promised that their loan modification would put them in a better position financially by forgiving or reducing their principal, but "Plaintiffs now owe the same amount in principal as they did at the beginning of the mortgage in 2003." ***Id.*** **¶ 46.** However, Plaintiffs do not point to any statements Defendants made promising their principal would be reduced pursuant to the loan modification. This statement and Plaintiffs' recitation of the promissory estoppel elements are insufficient to state a claim.

Plaintiffs' TILA (CCPA) claim simply quotes a statutory section and contains the following one-sentence factual assertion: "Defendants violated the CCPA by failing to disclose the purported assignments/transfer of the Promissory Note and DOT." ***Id.*** **¶¶ 54–55.** It is unclear what transfer occurred as Plaintiffs do not specify and, additionally, this statement is conclusory. Therefore, Plaintiffs again fail to state a claim.

Plaintiffs' Regulation X claim mostly includes quotes from various sections of Regulation X. ***Id.*** **¶¶ 56–67.** Plaintiffs provide a couple of conclusory allegations, including that Wells Fargo "did not act affirmatively to complete Plaintiffs' loan modification application and did not exercise reasonable diligence to obtain any documents/information to complete the application." ***Id.*** **¶ 61.** Plaintiffs fail to provide factual context or other detail to help allege that Wells Fargo did not, for example, act with "diligence." ***Id.*** Additionally, Plaintiffs allege that Defendants are "attempting to foreclose on the Plaintiffs' property without any legal authority" but do not provide any other information about this alleged foreclosure attempt. ***Id.*** **¶ 67.** These bare, conclusory assertions do not meet Plaintiffs' burden to state to claim.

Last, Plaintiffs' FDCPA claim simply summarizes a provision of the statute without any specific factual assertions. ***Id.*** **¶¶ 68-69.** Simply put, a claim without any factual assertions is insufficient.

Plaintiffs' Amended Complaint does not salvage these claims.[6] Plaintiffs' Amended Complaint adds a handful of factual assertions but does not connect them to specific claims. In

[6] Plaintiffs also attempt to introduce new factual allegations in their Response. A Response is an improper method to add factual allegations to a Complaint under Rule 15 of the Federal Rules of Civil Procedure. Thus, the Court will not consider Plaintiffs' Response for the new factual allegations as this would improperly bypass the procedural rules regarding amending a complaint. With Plaintiffs' *pro se* status in mind, the Court has given Plaintiffs' Amended Complaint some leeway, but the Court will not allow this further deviation from the standard procedural rules all parties, *pro se* or not, must follow. *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840

paragraphs 12 and 13 in their "General Allegations" section, **Am. Compl. ¶¶ 12-13**, Plaintiffs provide new factual details surrounding the amount their principal has changed, the amount due in the balloon payment, and allege that there is a discrepancy with one spouse being listed on the loan agreement. ***Id.*** None of these factual allegations are offered in support of any specific violations besides the general assertion that it violates "HAMP guidelines." ***Id.* ¶ 13.** The Amended Complaint falls below the necessary threshold of clarity and plausible factual allegations to state a claim. Therefore, Plaintiffs' claims are both time-barred and insufficiently alleged to state a claim. Defendants' Motion to Dismiss is successful.

**CONCLUSION**

Having evaluated the relevant briefing, the Court finds Defendants are persuasive as to their Motion to Strike **(Doc. 12)** and their Motion to Dismiss **(Doc. 13)**. All claims are dismissed.

**IT IS THEREFORE ORDERED THAT:**

(1) Defendants' Motion to Strike (Doc. 12) is **GRANTED**;

(2) Defendants' Motion to Dismiss (Doc. 13) is **GRANTED**; and

(3) This case is dismissed.

/S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

(10th Cir. 2005) ("This court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants.") (quoting *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994)).